UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY E. JAMES,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Case No.: C08-653 CRD

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff Mary James appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") who denied her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA" or the "Act"), 42 U.S.C sections 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the SSA, 42 U.S.C. sections 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-two-year-old woman, thirty-two years old at the alleged disability onset date. She has a limited education and has work experience as a blackjack dealer, flagger, and prep cook.

Plaintiff applied for SSI and DIB in August 2004, alleging disability since November 1998. Her claim was denied initially and upon reconsideration, and she timely requested an ALJ hearing. On May 7, 2007, a *de novo* hearing was held before ALJ Adams. The ALJ heard

ORDER - 1

testimony from a vocational expert and from Plaintiff, who was not represented by counsel. Administrative Record ("AR") at 525-48. The ALJ rendered an unfavorable decision on August 21, 2007. Plaintiff requested Appeals Council review; review was denied, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210 (2006). On May 1, 2008, Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. sections 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV. THE DISABILITY EVALUATION

As the claimant, Ms. James bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. AR 35, Finding 2. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff has the severe impairments of sarcoidosis with related chest wall pain and wrist tendonitis. AR 36, Finding 3. If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*. Here, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of any listed impairment. AR 39, Finding 4.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1]Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

ORDER - 3

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The ALJ in this case found Plaintiff "has the residual functional capacity to perform light work except that she needs an air conditioned environment without exposure to smoke and she can only frequently handle or finger."  AR 39, Finding 5.

The ALJ next found that Plaintiff is not capable of performing her past relevant work as a blackjack dealer, flagger, or prep cook, because "[t]hese jobs require working in smoky environments, working in a non-air conditioned environment, and constant handling and fingering respectively."  AR 41, Finding 6.  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, the claimant is found disabled and benefits may be awarded.  In this case, the ALJ consulted a vocational expert and determined that Plaintiff could perform a limited range of light, unskilled work such as a ticket taker, cashier, and counter attendant, and therefore concluded Plaintiff was not disabled as defined in the SSA.  AR 42.

## V. ISSUES ON APPEAL

Plaintiff presents the following principal issues on appeal:

1. Did the ALJ err in rejecting the opinions of her treating physician?
2. Did the ALJ err in assessing Plaintiff's credibility?
3. Did the ALJ err in assessing Plaintiff's severe impairments?
4. Did the ALJ err in assessing Plaintiff's RFC?
5. Should the case be remanded to consider new evidence?

///

///

# VI. DISCUSSION

## A. *The ALJ did not err in assessing her treating physician's opinions.*

Plaintiff asserts that the medical opinions of her treating physician, Dr. Backman, are uncontradicted and that the ALJ erroneously rejected his opinions based on the belief that Plaintiff had not been truthful with her doctors. Dkt. 10 at 6; Dkt. 16 at 5. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 31 (9th Cir.1995); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751 (internal citations omitted).

Plaintiff argues that the ALJ's conclusion regarding Dr. Backman's purportedly uncontradicted opinions is not supported by clear and convincing evidence, and that the ALJ based the rejection of his opinions on her presumed lack of credibility is also in error. Specifically, Plaintiff asserts the ALJ's statement that: "[a]s for the opinion evidence, I have considered the statements by Dr. Backman and the other DHSH evaluations, but I do not believe that the claimant has ever been truthful with her providers about her activities or abilities as she has preferred to see herself in the role of a disabled person," is a total rejection of Dr. Backman's opinions based on the ALJ's belief that Plaintiff was not truthful to her doctor. AR 41; Dkt. 10 at 6. Defendant argues that the ALJ did not entirely reject Dr. Backman's opinions, but gave them only limited weight in some areas, and that because Dr. Backman's opinions are contradicted, they are subject to the more deferential standard of "specific and legitimate reasons." Defendant asserts that regardless, the higher standard of "clear and convincing" is also satisfied. Dkt. 15 at 10.

The Court disagrees with Plaintiff's characterization of the ALJ's statement. The ALJ does not state that no weight is given to Dr. Backman's or the other evaluators' opinions, but

explains that Plaintiff's perceived lack of truthfulness diminishes her subjective reporting of activities and abilities to her doctor. AR 41. The ALJ's decision discussed Dr. Backman's findings in detail, giving some of his opinions less weight based in part on what the ALJ found to be a lack of Plaintiff's credibility. For example, with respect to Plaintiff's ability to work affected by sarcoidosis, the ALJ noted "…Dr. Backman completed a Functional Limitations Evaluation stating that the claimant could sit and perform occasional standing and walking for four hours. She could lift consistent with sedentary work," and further that, "[p]ulmonary function tests on November 13, 2003, showed that the claimant had mild restriction and normal lung capacity. She had a mildly reduced diffusing capacity. Her doctor recommended that they proceed with bronchoscopy for possible sarcoidosis. The bronchoscopy confirmed the diagnosis." AR 36. The ALJ also noted that, "…Dr. Backman completed a DSHS evaluation of the claimant. He said that the claimant had recently been hospitalized for pneumonia and that she had sarcoidosis and reactive airways disease. The claimant reported that her asthma was worse when she was outdoors or in winter weather. He felt that claimant was limited to sedentary work." AR 38. Thus, the ALJ found Plaintiff to have the severe impairment of sarcoidosis as Dr. Backman diagnosed, but also found significant that even Dr. Backman did not conclude Plaintiff is unable to work but that she was able to perform sedentary work. The ALJ went on to cite nonexamining medical opinions that concurred with the sarcoidosis diagnosis, however contradicted Dr. Backman's finding that she could perform only sedentary work:

> Doctors for the State Agency found that the claimant had quiescent pulmonary sarcoidosis, chest wall pain and hypothyroidism: she was **limited to light work**. They noted that her spirometry was stable and she had poor effort on examination. They noted inconsistencies in the record as to effort and presentation and they did not find the claimant fully credible. They found that the claimant did not have a severe mental impairment. They noted a number of credibility issues in this case. The claimant gave vague and evasive answers to Dr. Epp, and she is not truthful to her treating doctor.

AR 38 (emphasis added). Consistent with Dr. Backman's and the state agency physicians' diagnosis, the ALJ concluded that Plaintiff has the severe impairments of sarcoidosis with related chest wall pain. However, the ALJ also noted that, "…Dr. Backman discussed with the claimant an accusation that she had been reported to be selling medications. She denied it and agreed that

ORDER - 6

they would try to discontinue medications, but he refilled her up to eight per day of Darvocet and Valium for four weeks. There is no indication in the record of any specific reduction in the claimant's medication after this discussion. It was about six months after this that Ms. Sullenger [Terry Sullinger, Physician Assistant] stated that she thought the claimant was practicing drug seeking behavior." AR 41. The ALJ found it relevant to recount the incident as reported by P.A. Sullinger: "[d]espite the fact that [Plaintiff] had walked in somewhat stooped forward and walking at a snail's pace and acting as if she was in severe pain, she stood up briskly, grabbed her coat from the rack and was observed to walk without any sign of distress out of the clinic and through the lobby." AR 37.

The ALJ also found that Plaintiff had likewise not been forthright in her examination with Dr. Epp, an examining state agency psychologist, noting that:

> Dr. Epp noted many inconsistencies in her presentation. The claimant has been suspected of selling her prescription medication and of drug seeking behavior. She has also engaged in activities such as heavy lifting when moving to her father's house, cooking fry bread at a fireworks booth, and fishing, which are not consistent with her alleged level of impairment. She has little objective evidence of impairment when she is seen in the emergency department for her multiple complaints of pain. She reports wrist and hand pain, but one of her hobbies is beading.

AR 40. Plaintiff disputes Dr. Epp's and P.A. Sullinger's conclusions regarding her credibility and argues that the observations were made in 2003 and 2004 before she applied for SSA benefits. However, the Court notes Plaintiff alleges disability since 1998 and finds the observations are relevant and appropriately factored into the ALJ's assessment of her overall credibility as relates to her alleged level of functioning.

The Court finds the ALJ's conclusion that some of the medical opinion evidence from Dr. Backman and other evaluators is diminished by Plaintiff's lack of truthfulness in reporting her activities and abilities, is a specific and legitimate reason, supported by substantial evidence in the record; as such, the ALJ did not err in this regard.[2]

---

[2] However, the Court does not accept Defendant's remaining arguments that Dr. Backman's opinions are also 1) brief and conclusory and 2) inadequately supported by clinical findings, reasons Defendant asserts are sufficiently clear and convincing for rejecting them (Dkt. 15 at 11-12). The ALJ did not give *any* of these reasons in his decision. The Court cannot substitute

ORDER - 7

**B.** *The ALJ did not err in assessing Plaintiff's severe impairments.*

Plaintiff asserts that the ALJ erred in not finding her mental impairment and obesity to be severe impairments at step two of the sequential evaluation and account for them in her residual functional capacity assessment. The step two inquiry is meant to exclude the most minor of impairments. It is a screening device used to eliminate cases that do not meet the threshold requirement of severity. *See Bowen v. Yuckert*, 482 U.S. 137, 154 (1987). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*quoting* Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Id.* (*citing Bowen*, 482 U.S. at 153-54).

*Mental Impairment*

Plaintiff argues that her depression and anxiety are severe mental impairments; she points to particular medical records and diagnoses in support thereof. Specifically, Plaintiff asserts that the ALJ should have considered the Global Assessment Functioning ("GAF") score of 55 assigned by Dr. Epp[3], as well as the depression diagnosis by Dr. Backman, and her various trips to the emergency room for anxiety and panic attacks, to conclude her depression and anxiety are severe impairments. Defendant argues that in addition to Dr. Epp's non-severe findings, Dr. Collingwood, a state agency evaluating psychologist, also concluded Plaintiff only suffered from "mild" limitation in any of the four categories of functional limitation identified by the regulations (AR 206). However, the ALJ did not discuss Dr. Collingwood's evaluation; therefore, the Court cannot presume it was considered.

---

Defendant's arguments for a presumed rationale of the ALJ's decision. *Ceguerra v. Secretary*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."); *accord Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995).

[3] According to the American Psychiatric Association, *Diagnostic & Statistical Manual* p. 34 (4th ed. 2000) (DSM-IV-TR), a GAF rating of 51-60 indicates moderate symptoms or moderate difficulties in social, occupational or school functioning.

ORDER - 8

In this case, the ALJ found Plaintiff's mental limitation is not a severe impairment, explaining that:

> [Plaintiff] has a non-determined mental impairment. While she has occasionally been treated for anxiety and depression, the only psychological evaluation in the record is from Dr. Epp who suspected that the claimant was not putting forth sufficient evidence at testing. As the claimant has not been credible in her reports of depression and she has not been in any consistent mental health care treatment, I find that she has a non-determined mental impairment.

AR 39. This conclusion follows a detailed discussion of Plaintiff's psychological evaluation by examining psychiatrist, Dr. Epp:

> Dr. Epp completed a psychological evaluation of the claimant on July 27, 2004. The claimant said that she felt she was depressed and that her medical problems were causing her depression. She reported no counseling history. She originally denied that she had ever been arrested but then later acknowledged that she had been arrested for theft in March. He did not believe that he obtained an accurate alcohol or substance abuse history. The claimant obtained low IQ scores in the evaluation and Dr. Epp [sic] that there is no way that a person who had worked as a dealer at a casino could obtain the low IQ scores that she obtained. The claimant had no pain behavior. The claimant was pleasant until Dr. Epp began administering testing. She refused to try to do serial subtractions. Her mental status examination was characterized by vagueness and non-responsiveness. The claimant appeared to see herself as totally disabled. She said that she spent her time beading and that she went to the movies with her boyfriend. She shopped for groceries and said that she paid the bills for the household. Dr. Epp diagnosed mood disorder due to thyroid malfunction with major depressive like features vs. a substance induced mood disorder with depressive features. He also gave a rule out diagnosis for factitious disorder. He noted that there did not appear to be any particular reasons for this person to go to work. He stated that the overall clinical impression was that the claimant was really quite competent. He felt that she was far more cognitively intact than the test data showed.

AR 37. Thus, based on Dr. Epp's evaluation, the ALJ did not believe Plaintiff had any mental limitation amounting to a severe impairment. The Court finds the ALJ's reasons for not finding Plaintiff's mental impairments severe at step two are based on substantial evidence in the record. Accordingly, the ALJ did not err.

### *Obesity*

Plaintiff next asserts the ALJ erred in not finding her obesity a severe impairment. Plaintiff points to a 2000 medical clinic report describing her as "quite obese" (AR 435), and a

2007 physical exam by Dr. Backman that notes she weighs 212 pounds. Plaintiff argues that because she is about 5-feet and one inch tall, this equates to a body mass index of 38.8, and that a number over 35 is classified as Level II obesity under Social Security Ruling ("SSR") 02-1p.

SSR 02-1p provides, "There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (*e.g.*, "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." In this case, the ALJ did not discuss obesity in his decision. Defendant argues the ALJ did not err based on *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), in which the court found the ALJ did not commit reversible error in not considering obesity at step two and in not finding it met a listing at step three. The *Burch* court explained:

> There was no evidence before the ALJ, and none in the record, which states that claimant's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed claimant's limitations due to obesity. The medical record is silent as to whether and how claimant's obesity might have exacerbated her condition. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work… Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is obese, and recommended that she participate in a medically supervised weight loss program.

*Id.* at 683. Plaintiff's case is quite similar to Burch's; she points to only one notation that she was "quite obese" in 2000 and claims no resulting functional limitation, even on appeal. Following the *Burch* rationale, the Court therefore finds the ALJ did not err in not finding Plaintiff's obesity a severe impairment.

       *C.*     *The ALJ did not err in assessing Plaintiff's residual functional capacity.*

Plaintiff argues that her RFC determination is based on improper assessments of her psychological and physical impairments, and that the ALJ's conclusion that she could perform other work is not based on substantial evidence.

The ALJ found Plaintiff has severe impairments of scarcoidosis with chest pain and wrist tendonitis. Based thereon, the ALJ concluded Plaintiff "has the residual functional capacity to perform light work except that she needs an air conditioned environment without exposure to smoke and she can only frequently handle or finger." AR 39. The ALJ therefore found Plaintiff is not capable of performing her past relevant work as a blackjack dealer, flagger, or prep cook, because "[t]hese jobs require working in smoky environments, working in non-air conditioned environment, and constant handling and fingering respectively." AR 41. As discussed above, the Court finds the ALJ did not err in assessing Plaintiff's severe impairments at step two, including her mental impairments and obesity. The Court finds the RFC assessment as relates to these impairments is based on substantial evidence and not in error. Plaintiff asserts the ALJ erred in finding that she can "frequently" finger or handle objects. Plaintiff argues that her wrist tendonitis prevents her from working at a job that requires frequent fingering or handling; however, Plaintiff does not explain how this is true based on evidence in the record. The ALJ found that although she is unable to constantly handle/finger, she is able to do so frequently, which is defined by the SSA as two-thirds of the time. The ALJ based this finding in part on Plaintiff's reporting that she is able to participate in hobbies such as beading and fishing, and as discussed above, that he did not find her statements concerning her symptoms entirely credible.

Plaintiff also alleges the ALJ failed consider the side effects of the medications she takes, arguing that she testified to taking 14 different medications on a daily basis and citing SSR 96-7p and SSR 96-8p. Dkt. 10 at 20-21. SSR 96-7p gives factors an ALJ should consider when assessing Plaintiff's credibility and SSR 96-8p gives factors an ALJ should consider when assessing Plaintiff's RFC, both of which include considering medication side effects. In this case, the ALJ discusses Plaintiff's medications throughout his opinion, including that in 2001 P.A. Sullinger "did not feel that the claimant needed any narcotic medication" (AR 36); that Dr. Backman noted in 2003 that her "medications were of modest benefits" (*Id.*); that Dr. Kahn noted in 2004 that little relieved her back pain except Demerol injections (*Id.*); and that in September 2004 she was using six Darvocet a day and diazepam for sarcoidosis and chronic chest wall pain (AR 38). The Court finds the ALJ considered the effects of Plaintiff's

medication and gave them appropriate weight in assessing her RFC, based on substantial evidence in the record.

Plaintiff also alleges that the ALJ erred for failing to fully develop the record by not obtaining a consultative examination. Dkt. 10 at 22. The Court disagrees. Plaintiff has not demonstrated that the evidence in the record was so ambiguous or inadequate as to require the ALJ to order an additional consultative examination. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). To the contrary, sufficient evidence existed for the ALJ to reach his decision without the need for further evaluation, including multiple examinations/evaluations by Dr. Backman and a consultative by examining psychiatrist Dr. Epp, as discussed above. Based on the existing medical records and opinions the ALJ concluded that the record contained sufficient information to render an informed decision as to Plaintiff's impairments. No more was required of the ALJ. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (*citing Ford v. Secretary of Health and Human Services*, 659 F.2d 66, 69 (5th Cir. 1981) (stating that the ALJ is required to order a consultative examination only when such an examination is necessary to enable the ALJ to render a decision). The Court finds sufficient evidence in the record exists for the ALJ to make an appropriate RFC determination without obtaining another medical opinion regarding Plaintiff's functional capacity. As discussed above, the ALJ based the RFC determination on substantial evidence in the record; as such, it is not in error.

*D.     The additional evidence would not change the decision in this case.*

Plaintiff asserts that the foot she broke in 2005 has not healed for over one year and that based on the February 2007 opinion of Dr. Backman that she has a "severely limited" work level, she should be granted benefits. Dkt. 10 at 22-23. Although records of Plaintiff's foot injury were not included in the record before the ALJ, Plaintiff submitted the additional records after the hearing. The Court notes that the new evidence was submitted to the Appeals Council and is part of the record on review for determination of whether the ALJ's decision is supported by substantial evidence. *See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

The additional records include four medical reports: a physical evaluation by Dr. Backman on February 7, 2007; an apparent emergency room report on August 15, 2007 by Dr. Rookstool, with an August 17, 2007 follow-up report by Dr. Backman; and an emergency room report by Dr. Apter dated August 21, 2007. AR 15-23. The Court has reviewed the additional evidence and concludes that it would not change the outcome of this case. Three of the reports concern gastro-intestinal and chest pain and are not disputed in Plaintiff's brief. The fourth report, from Dr. Backman in February 2007, is a DSHS evaluation form concerning Plaintiff's foot fracture. Dr. Backman notes November 30, 2006 as the date of the foot injury (AR 16); he opined Plaintiff's foot "can't weight bear" and that she was in the "severely limited" work category, which he estimated would continue without medical treatment for 90 days to 12 months (AR 18). Dr. Backman also noted that allowing "healing of fracture" would improve employability and that she should be re-evaluated in three months. AR 18.

The Court finds that Dr. Backman's 2007 report would not change the ALJ's decision. At most, Dr. Backman's opinion notes the November 2006 injury would, without medical treatment, continue for three to twelve months and that she should be re-evaluated in three months concerning employability. SSA regulations require an impairment to persist for a continuous period longer than twelve months. At the hearing, Plaintiff discussed her foot with the ALJ and testified, "It's kind of healed, but at the end of the day it's swollen." AR 537. The ALJ gave Dr. Backman's earlier reports limited weight based in part on Plaintiff's lack of truthfulness in reporting her subjective complaints to her doctors. Dr. Backman's opinion, taken along with the ALJ's assessment of Plaintiff's credibility problems in reporting her symptoms and limitations, and her hearing testimony do not provide "a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Accordingly, the Court finds that even in light of the additional evidence the ALJ's decision is supported by substantial evidence and not in error.

///

///

///

## VII. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED and the case is DISMISSED.

DATED this 12th day of January, 2009.

Carolyn R. Dimmick
United States District Judge